May it please the Court. Good morning, Your Honors. Good morning. Jay Nelson on behalf of Joshua Merritt. I'll do my best to watch my own clock and I'll try to reserve two minutes for rebuttal. All right. I'd like to focus this morning, if we could, on Mr. Merritt's juror bias claim and if there's time left on the clock then to pivot towards our sentencing claims. At the outset, I think it's important to address the facts because important legal determinations flow from the facts. Well, you can be assured that we've read the facts. Thank you, Your Honor. So with that in mind, I believe a faithful reading of the amended transcript reveals a three-way agreement during voir dire between the district court, defense counsel, and government counsel that juror number 30 should be removed for bias. Just to briefly summarize, I know you said, Your Honor, that you read it, but at further excerpts of Record 24, we have the judge, the district judge, clearly identifying juror number 30 as someone who should be removed for cause. Defense counsel agreed with that assessment. The government not only didn't disagree but attempted to add three more jurors to the district court's list. The district court rejected that offer. Do you think it's clear from the jurors? Are we talking, this is juror number 30, yes. Do you think it's clear from the voir dire with juror number 30 that that person was biased against your client? Yes. Why do you say that? Because the words that came out of his mouth, Your Honor. He said he has personal experiences with, I think you referred to it as this kind of stuff, meaning some form of child exploitation is what it seems to me to be, Your Honor, if not specifically child pornography in his personal life and in his work life. And he said directly, I think it would be very hard for me to be fair in this case. And the district court, of course, on appeal, we're giving due deference to the district court's determination. The district court credited that, found him credible. Both parties agreed. And so now we have, not only my opinion, but we have a finding by the district court that juror number 30 was biased and should have been removed for cause on that basis. But actually the district court intended to remove, it appears from the record that the district court intended to remove the juror from the panel. Yes. But it didn't happen. That's right. So what do we do with that? If we have an indication in the record that the district court intended to remove the juror for cause but didn't do so, what do we do with that? Well, I think my interpretation of the record is that everybody simply dropped the ball. Trial is busy. Trial is messy. They're juggling a lot of jurors and a lot of different issues all at the same time. There was a list of eight jurors that Judge Collins was trying to excuse, and juror number 30 simply slipped through the cracks. We would be in a much different posture if the district court had at some point made a finding of rehabilitation and had reversed course and said, no, you know what, I think, after all, juror number 30 can be fair and impartial based on something that juror number 30 had said. But I think it's pretty clear from the transcript that what happened is he simply slipped through the cracks. We have a situation here where the juror didn't say, I can't sit on this case. He's going to have a problem with it. Is it very difficult to be fair? And then there's a series of other questions where he never raises his hand, okay, and then they go ahead and hit her. The trial counsel had an adequate opportunity to excuse the juror, didn't do so. Then all of a sudden we're going to say we're going to redo the trial. I'm not even sure you get to that point. There's a lot of jurors that we all know that express some doubt, but then they hear more about it and no one complains. The defense lawyer does not complain, does not ask for challenge for cause, does not exercise a peremptory. It seems that everybody was moving in that direction. Isn't this a little outside the reality of the trial to say now that this juror poisoned the whole trial? I think it falls squarely within it, Your Honor, within the messiness of the trial, speaking to that issue. And I think that that explains why he simply, everybody simply lost track of juror number 30. Who lost track? The district court and both counsels. What in the record says they lost track? Do you have something that he said or did that he lost track of the juror? Two things. Number one is he never actually made a finding of rehabilitation. So that speculation on the government's part. Wait a minute. What's a finding of rehabilitation? That happens, Your Honor. There's nothing to rebiliate. He just said I have a problem. It happened, for example, in the Martinez-Martinez case, Your Honor, where there were questions about the juror's impartiality, and subsequently there was actually a finding by the district court that the juror could, after all, be fair and impartial. And that was from the Martinez-Martinez case. And we have the opposite of that here. So the defense counsel is sitting there and doesn't ask the question, doesn't ask the judge to rehabilitate, doesn't exercise a peremptory. Obviously, the lawyer himself or herself was satisfied with the juror or they would have excused. Doesn't this record show much more likely that the juror was accepted by everybody and just that they had a problem at one time and did not raise their hand with the other problems that people were satisfied? I disagree, Your Honor. I think what the record shows is that both parties trusted the district court to follow through on its word, that he was intending to dismiss juror number 30. And we know that because all other seven jurors on the district court's list did ultimately get excused. So the only finding that we have from the district court about this juror is that he was biased and should have been removed for cause. There's no follow-up finding. So all points of the – all pieces of the puzzle point to the fact that when you look at all the other seven jurors on the list got excused, that – and there's no other evidence in the district court that this juror was ever rehabilitated, that he simply slipped through the cracks and then became the foreperson of the jury. Slipped through the cracks. That's right, Your Honor. The lawyer represented him through the trial judge who knows exactly what the trial judge was going to do. And we speculate it fell through the cracks. Well, actually, Your Honor, in our further excerpts of record, we even have a quote. There's no record that slipped through. There's no record at all. You're making an assumption from a no record rather than an assumption from the record. Well, the record shows a finding by the district judge that the juror should have been removed, was excusable for cause. And that's the only finding in the record about the juror. Wait a minute. It was excusable for cause because they probably may have a problem, peremptory perhaps, but cause at that stage? Yes, Your Honor. And that stems from the deference we owe on appeal to the district court's credibility determination. The district court and both parties accepted at face value that when the juror said I'm going to have a very hard time being fair and impartial in this case due to aspects of my personal life and aspects of my work life. So he gave a concrete basis tied to his own personal experiences about why he was going to have a very hard time being fair and impartial in this case. And under the last week's decision in Kitchezian, which drives home the point that jurors need to affirmatively declare that they can be fair and impartial. That's a core teaching of last week's case. This juror never said that. And jurors say it all the time. It's very easy for a juror who does feel fair and impartial to say, sure, I can be fair and impartial. Happens all the time. Happened on this jury significantly. With this particular juror, the only thing he said about his own fairness and impartiality was it's going to be very hard for me. And I think the last point I'd like to make, because I am going to run out of time and I'd like to reserve for rebuttal, is another important teaching from last week's case in Kitchezian. I'm butchering the name. I apologize to that individual. Is that later rehabilitative questions actually have to address the question of impartiality. So when we're talking – when the subsequent questions relate simply to can you – do you agree with the burden of proof? Do you agree with the presumption of innocence? Those questions don't speak directly to the question of impartiality. And therefore, I say as a matter of law, cannot rehabilitate the juror. And, Your Honor, from your 2009 decision in Mitchell, I interpret the decision as making a similar point. And I think there's a quote, Your Honor, if I could find it really briefly, that at pages 1152 to 1153, the Court wrote, Critically, none of the subsequent questions explicitly return to the theme of whether she could be a fair juror in this case. So there's a conceptual difference between adherence and acceptance of the lofty principles of criminal justice that we all adhere to in our justice system versus fairness and impartiality. But doesn't this show, however, the best evidence is competent counsel was sitting there and did not exercise a challenge for cause. The best evidence, Your Honor, is the subsequent question. And did not exercise a peremptory, even a peremptory. Doesn't that show that the person who was there protecting the defendant thought that there was not a problem with this juror and didn't even exercise a peremptory challenge? I think it shows, Your Honor, that he trusted Judge Collins to make the strike and his brain moved on to other aspects of the case and to the New Jersey. And if I could reserve the remainder of my time, Your Honor. All right, counsel. We'll hear from the government. Thank you.  Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning.       Good morning. Good morning. Good morning. Ms. Jacobs, you said earlier that there's an obligation in a case of juror bias when there was not an objection below, nor an opportunity to cure. Well, there didn't have to be an objection, did there, if the judge had already said that this juror was biased and could not serve as a fair juror? Why would there be a need for an objection in light of that finding by the court? Well, Your Honor, first of all, I don't know that the record is clear that the judge found bias. Why would he strike the juror from the panel? Well, judges and parties acquiesced to this, judges strike sua sponte all the time. Oh, they don't. No, they don't. Often, for various reasons. And in this case, it's clear that the juror's first response or initial response, there's only actually one response by him that's relevant, and that's when he said it would be very difficult to be fair. That was not, there was no drilling down on that. It was a vague initial response. There was no additional digging on the issue. And at the end of the group of jurors who indicated that they might have trouble with the nature of the charges, the judge then summarized the list of the people that came forward. He never made an actual finding that there was bias, but. . . All the other jurors that made it on the list. . . Were excused. Yeah, yeah, they were excused for giving similar answers, which suggested that they couldn't be fair and impartial. So I don't see where you're going with this argument, actually. Well, Your Honor, I think that here we have to look at the record as a whole, because although the judge initially clearly intended to excuse Juror 30, he didn't. And so. . . But, Counselor, didn't the transcript say that the judge stated he was intending to dismiss because those jurors couldn't be fair? Because the jurors said they could not be fair and impartial. No, because, no, not they said they couldn't be fair. I'm looking at further excerpts of record 8 through 9. The court reported stated that she discovered a transcription error involving the admission of the number 30 from the list of jurors. The judge stated he was intending to dismiss because they couldn't be fair. That was the court's intention. However, in subsequent voir dire, there were four questions, some of which addressed specifically the issue of judging the case on its merits, letting it rise or fall on its merits, application of the evidence to the law. Which question addressed the ability of the juror to be fair? There were. . . There was a final question on page 111 where the court asked if there was anything else that the parties ought to know. There was. . . Do you think that can be fairly read to address whether or not the juror could be fair after there had already been a determination by the judge that the juror could not be fair? Sure, Your Honor. In addition to that, the intervening 11 references to the need to be fair and impartial that were made to the whole panel also should count towards the evaluation of whether Juror 30 was actually biased. On this record, what we have is a series of negative responses to questions about judging the case on its merits, respecting and applying the evidence to the rule or the rule of law to the evidence presented, and many, many references throughout voir dire, but 11 post sidebar with Juror 30 to being fair and impartial. That was to the whole panel. Is any questioning ever directed specifically to Juror 30 that could rehabilitate that juror? Well, the question about this case must rise or fall on its own merits, does anyone have a problem with that concept? That was on page 60. Was it directed specifically to Juror 30? No, it wasn't. In fact, there wasn't any additional questioning of Juror 30, which is relevant. This Court's decision in Mitchell is probably the most on point here, because in that case, the argument was that the judge should have sua sponte, excused the juror for bias, and the Court said, and the answers in the Mitchell case were very ambiguous, but the juror waffled. She said, I don't think so about whether it would affect her family had been killed by a drug dealer. I don't think so about whether it would affect her ability to be impartial, but then it was followed by, well, it would be on my mind, and a little bit later, well, yes, it will affect me. But that was specific questioning to that juror, and in that case, the Court had not already made a determination that the juror could not be fair. Right. That's the problem I have with the government's position in this case. The Court made a determination that this juror could not be fair. The initial intention of the Court to strike the juror may have been based on that assessment, but what we have on this record, the whole record, it shows that neither the Court nor the parties, by the time that Boisdre was concluded, still believed that juror posed a problem. The fact that there was no strike, no motion to excuse that juror before he was empaneled, the fact that there was no, that is not the same. Stipulating to, agreeing to the judge's initial direction is not the same as stipulating that there was bias here. Well, it doesn't matter if it was stipulated to or not. The judge made the determination, and the problem for your position is the other seven people who were listed by the judge were all stricken from the jury. So to me, that's an indication that the judge intended to strike all eight of them. I agree with Your Honor that the record does show that he intended to. He was very liberal with excusing jurors, and the parties were okay with that. He made a specific finding that that juror could not be fair. It's not just that he excused the juror. He made a finding that all eight of those jurors could not be fair. But then he did not excuse Juror 30. So on this record, the court needs to evaluate whether, number one, that there is actual bias by the juror, and, number two, even if you find an error and that there was bias, which I submit is not supported by this Court's precedent, even if you find an error, then we should still move to the fourth prong of Alano, which is did this substantially affect the fairness or integrity of the verdict? And you can tell on this record that it did not. Any error in this case did not affect or influence the outcome. So some cases suggest that we don't do harmless error, that it's structural error if a biased juror sits on a case. What's your response to those cases? Well, first of all, there's a little bit of conflict as to that, as the Court noted in Mitchell, that it's unclear, but there's really no question that Alano applies whether it's structural or not. The Supreme Court gave that very clear message in Weaver, and although that was an ineffective assistance of counsel case, the point made was the lack of opportunity to cure is the point. The court below must have an opportunity to cure and develop a record. And that's why all of the cases that this Court has ever reversed on the basis of juror bias have been based on a clear record below which was made in the context of an objection by counsel, where we don't have that here. We don't have a clear record. We have many curative questions, and we have only the initial statement that it would be very hard for him to be impartial, never stating that he would not be able to be    the obstructive inheritance error step. What case do you have to support the proposition that harmless error applies when a biased juror has been allowed to sit on the case? Well, What's your strongest case authority? I would say that even in Resio, this court, although that was a jury instruction case, but a lot of I'm asking you specifically for the case that says harmless error analysis applies when a biased juror has been allowed to sit on a case. Harmless error does not apply in the case where there wasn't an objection below. I don't think it does apply. For the general proposition that if a biased juror is allowed to sit on a case, we apply harmless error to decide whether or not to reverse the case. What case supports your proposition that harmless error review applies to that circumstance? Well, it's plain error review when there wasn't an objection below, but I would submit Well, we have in this case a judge's finding that the juror was biased. So if we take that finding from the district court judge, what case allows us to apply harmless error review after a finding that a biased juror was allowed to sit on the case? I'm not sure that there is such a case, although Alexander and Gonzalez and also other cases involving structural error did still apply that four-prong test in Olano. They still, even with structural error, do apply it. But there aren't cases like this one where there was no opportunity to cure and no objection on the record below, thereby leaving an incomplete record. Just one last question. Do you agree with your opponent that whatever concerns caused the judge to make the finding that this juror couldn't be fair, do you agree that the bias that this juror expressed was against the defendant? No. I think that's not even clear from the record at all. Why do you say that? You think that he doesn't come out and say explicitly which side he would be against. But given the context, isn't it clear that he was expressing issues with, like, whatever else had happened in his life that had something to do with maybe a child being molested or something? Well, that would be speculation on this record because he did not specify. But one thing that's interesting, on page 92, a question was asked to the entire panel with a negative response by Juror 30. Any of you ever, either yourselves or a family member, ever felt exploited or violated by images of yourself or family members on the Internet? And there was no response to that. So the fact — and he did say in his initial response — Well, it didn't necessarily have to be on the Internet. That question applies specifically to the Internet, which would not cover in-person molestation. That's fair. But he did say in his initial response that it wasn't himself personally. His language was not necessarily having the experience myself, but directly or indirectly, however you say it, which I submit is a little bit confusing and certainly doesn't tell us anything about what his prior experience was and whether it biased him in either direction. It's that vague of a record. And that is why there should have been and must have been an opportunity to cure and develop a further record before we can say that this was a plain error, that there was actual bias. And even, as I said, even if there was actual bias on the part of Juror 30 here, the record in this case with overwhelming evidence, as confirmed by the quick turnaround of the jury, shows that any error did not contribute to the verdict. Well, the difficulty is that this person was the foreperson of the jury, which complicated it even further. Well, I would submit that the foreperson is a clerical position, and I did look. Foreperson is more than a clerical position. They drive the jury's decision in a lot of ways. They take control of the jury in the jury room. You know that. I have not been on a jury, Your Honor, but I do think that they speak for the jury. They organize the jury. But their vote is no less or more important than any other one juror. It is the same validity. And there was one case that I found, it was Hayat, it was cited by the defense in reply here, where there was a foreperson that was alleged to be biased. There was no discussion at all in that case about the fact that he was foreperson, about whether that was relevant or not relevant. And in that case they also found that there was not bias required. All right. Thank you, counsel. You've exceeded your time. Thank you. Thank you. Thank you, Your Honor. If I could try to squeeze in three quick points. Number one, I don't want to lose sight of the fact. We've asked the Court to prevent the government from even arguing that there's no bias in this jury as a matter of judicial estoppel. FER24 establishes the government's agreement that this individual should have been kicked off the jury. Now that we've raised the issue before this Court, the government has completely changed its tune. The integrity of this Court, I think, requires that the government bar the government from even making that argument. Number two, this issue is preserved. So I contend that the whole conversation about plain error is a side show because the district judge made a finding that the juror was biased. This is not under the Palmer and Palmer line of cases. Once a judge makes a ruling, the parties are allowed to rely on that in subsequent proceedings. And so the contemporaneous objection rule is circumscribed by that fact. And finally, this species of error, this species of structural error. Do you have a case for that last position? Do you have a case for that last statement? The Palmer case, Your Honor. We cited it in our briefs. And also that derives from a case called Palmerin. Those are generally related to motions in limine. And they hold that when a judge rules on a motion in limine, contemporaneous objection later in trial isn't required because the judge has already made a ruling and it elevates form over substance to require. I thought you had one that was more relevant. Go ahead. The situation doesn't arrive at this very often, Your Honor. I mean, you know, with a juror being found to have bias and then ending up on the jury, it's not actually – it's been hard to find cases directly on point. If I could squeeze in my last point, Your Honor, this – Excuse me. Are you saying – are you saying that if you're right on everything that happened, we would assume that if you made an objection for cause that it would have been out of line, overruled? No, Your Honor. I think it would have been sustained potentially. It's hard to say. It's an alternate universe. I don't know what would have happened. I understand. I misunderstood. Your point is that it was not necessary to make an objection because the Court had already made a ruling that the defense had relied upon. At that point, the ball was in the judge's court to enact a plan of action that he announced on the record. And finally, if I could, Your Honors. And you could have made a peremptory objection. I mean, the defense lawyer could make a peremptory objection. Peremptory would have been available, Your Honor. Even if the judge finds whatever they found, you were not – the defense lawyer was not prohibited from making a – not a challenge for cause, but just a peremptory – No. And I think, Your Honor, that shifts the burden to the defense. Unfairly, when – I didn't ask you that. I said, can you? Is it possible? Possible, yes, of course. Yes. That's all I want. Thank you. Finally, if I could, Your Honors. This species of structural error is not amenable to harmless error review. Whether you deem the error preserved or whether you apply plain error review, it's impossible to identify trial prejudice from what bias a juror might have had inside the deliberation room. I think even though you – the Court is allowed to apply plain error review to structural errors generally, this particular kind of structural error is not amenable to harmless error analysis and therefore not amenable to plain error review. All right. Thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the Court. The next case on the calendar for argument is United States v. Johnson.
judges: Wallace, Rawlinson, Watford